UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STACY FINK                                                                PLAINTIFF

V.                    NO. 3:18CV00233-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]         DEFENDANT

## ORDER

## I.  Introduction:

Plaintiff, Stacy Fink ("Fink"), applied for disability benefits on September 22, 2016, alleging disability beginning on June 1, 2012. (Tr. at 14). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 24). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

## II.  The Commissioner's Decision:

The ALJ found that Fink had not engaged in substantial gainful activity since the alleged onset date of June 1, 2012. (Tr. at 16). At Step Two, the ALJ found that

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

Fink had the following severe impairments: obesity, degenerative disc disorder, obstructive sleep apnea, major depressive disorder, generalized anxiety disorder, and cannabis use disorder. *Id.*

After finding that Fink's impairments did not meet or equal a listed impairment (Tr. at 17), the ALJ determined that Fink had the residual functional capacity ("RFC") to perform work at the sedentary level, except that: (1) she must have an option to sit or stand at-will during the workday; (2) she could occasionally kneel, crouch, crawl, and climb, and occasionally stoop to reach at a table top level; (3) she could understand, remember, and carry out simple job instructions, make judgments in simple work-related situations, respond appropriately to co-workers and supervisors, and respond appropriately to minor changes in the usual work routine; and (4) she should avoid interaction with the public. *Id.*

Based on her RFC, the ALJ concluded that Fink was unable to perform any of her past relevant work. (Tr. at 23). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Fink's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a surveillance monitor and machine tender. (Tr. at 24). Thus, the ALJ found that Fink was not disabled. *Id*.

**III. Discussion:**

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Fink's Arguments on Appeal

Fink contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not give appropriate weight to her

treating nurse's functional capacity opinion and that the ALJ did not incorporate all of Fink's limitations in the hypothetical question he posed to the VE.

Ms. Jessica Wood, APRN, saw Fink during the last two years of the six-year relevant time-period. (Tr. at 340-370, 525-555). While Fink presented with low back pain, Wood found generally normal musculoskeletal exams, with normal strength, tone, and reflexes, and only moderate paraspinal tenderness. *Id.* She had mostly normal range of motion in her spine, with negative straight-leg raises and normal gait and station. *Id*., (Tr. at 680). X-rays and MRI of the lumbar spine were unremarkable. (Tr. at 365, 384). Fink was able to do things like prepare meals, do household chores, drive, and shop in stores. (Tr. at 278-283). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995)

Fink was 5'2" and weighed about 300 pounds. (Tr. at 37). She was regularly encouraged to diet and exercise by her doctors, but she admitted she did not do either and her weight remained about the same throughout the relevant time-period. (Tr. at 344, 527-535). Due to her obesity and low back pain, Fink obtained the services of a home health aide, who came into Fink's home daily and took care of virtually all of her needs. (Tr. at 45). Indeed, the home health aide reported to Fink's home every day from August 24, 2017 through November 10, 2017. However, after each of her

4

visits, the home health aide noted that Fink's condition was good. (Tr. at 831-887).

Nurse Wood wrote, in July 2016, that Fink was severely limited in her capacity to find a full-time job. (Tr. at 360). This opinion about Fink's inability to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

Nurse Wood completed a check-box medical source statement, in May 2017, that stated Fink would need frequent rest periods and longer than normal breaks due to morbid obesity and paraspinal tenderness. (Tr. at 646-647). Wood said that Fink would miss three days of work per month. *Id*. Fink says that the ALJ should have given more weight to this opinion about frequent breaks and should have included that limitation in the hypothetical question. However, the opinion is inconsistent with Wood's own mild clinical findings; with the objective tests which showed unremarkable conditions; and with Fink's ability to engage in daily activities. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005)("physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.") (Tr. at 21-22).

Finally, Nurse Wood's statement was on a short check-box form, with no reference to clinical findings. A conclusory check-box form has little evidentiary

5

value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Moreover, pain management notes indicated mild conditions; in April 2017, her chronic pain was stable and she wished to continue with conservative pain management. (Tr. at 673-675). Fink said that her back pain was alleviated by sitting, which aligns with the ALJ's limitation to sedentary work. (Tr. at 674). The ALJ properly discounted Nurse Wood's restrictive opinion, with respect to the need for frequent breaks. (Tr. at 22). The hypothetical, which did not reference a need for frequent breaks, fully incorporated Fink's credible limitations.

Fink also argues that her numerous mental health appointments meant she could not complete a full work week. First, the mental health treatment notes show that Fink's anxiety and depression were related to situational stressors and she was improving when she followed treatment recommendations.[3] (Tr. at 340-356, 761-827). By November 2017, Fink appeared cooperative and friendly, was fully oriented, had normal speech and flow of thought, and was well-groomed and compliant. (Tr. at 974-976). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir.

---

[3] At one point, when interacting with her therapist, Fink said that practicing anti-anxiety skills "seems like a lot of trouble." (Tr. at 767-768).

1992). Additionally, there was no evidence that Fink would not be able to schedule therapy sessions outside of regular work hours or during her lunch break, so this argument fails.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly weighed Nurse Wood's opinion and the hypothetical question incorporated all of Fink's credible limitations.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Fink's Complaint is DISMISSED, with prejudice.

DATED this 8th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE